IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| VTLM TEXAS L.P. | § | CASE NO. 13-51330-CAG |
| | § | (Chapter 11) |
| Debtor | § | |

## MOTION FOR ABSTENTION OR, IN THE ALTENATIVE, MOTION TO DISMISS

**TO THE HONORABLE CRAIG A. GARGOTTA, UNITED STATES BANKRUPTCY JUDGE:**

Now Comes Verano Land Group, LP, ("Verano") an interested party in this case and files this Motion for Abstention pursuant to 11 U.S.C § 305, or in the alternative, Motion to Dismiss pursuant to 11 U.S.C. §1112(b) and for cause would show:

### Jurisdiction

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### Overview of Motion

2. Verano moves to dismiss this Chapter 11 bankruptcy case because it is a sham proceeding engineered only to thwart an 18-month-old complex litigation matter in the Nevada State Court, the jurisdiction that the Nevada Supreme Court has expressly held to be "the proper forum" for the litigation between Verano and debtor VTLM. See Nevada Supreme Court Order attached hereto as Exhibit 1. VTLM's bankruptcy schedules admit

1

that Debtor's only real asset is $382.64 in cash, and VTLM's representative has provided sworn testimony that Debtor has no operation, no connection to Texas, and zero intention of doing anything other than winding up its affairs. All of these factors demonstrate that VTLM is not a viable business entity that qualifies for bankruptcy protection under Chapter 11, and this Chapter 11 petition was nothing more than bad faith forum shopping designed to frustrate Verano's Nevada lawsuit, which was moving through discovery towards its scheduled April 2014 jury trial date until VTLM derailed it with this meritless Chapter 11 petition.

**Statement of Facts**

3. In or about early 2006, Robert Lozzi, Tom Lozzi, and Ralph Lampman commenced the acquisition of multiple tracts and parcels of land in San Antonio, Texas, totaling approximately 2,650 acres. While the property was under contract and in escrow, and themselves Southern Nevada residents, they began soliciting Nevada investors from within Nevada to fund the purchase and close the deal. In their pitch, they articulated a general vision for the property as a master-planned, mixed commercial and residential development, for which the property would be assembled, shepherded through the initial development-entitlement process, and then sold to a master-plan developer. The solicitation efforts of the Lozzis and Lampman ultimately raised more than $60 million (mainly paid and originating from Nevada accounts) primarily from Southern Nevada investors, and the initial purchase closed in approximately July 2006. To facilitate the fundraising process, the Lozzis and Lampman created Verano Land Group LP a Nevada limited partnership ("Verano") as a partnership between San Antonio Management LLC,

a Nevada limited liability company ("SAM") (as the General Partner) and the investors (occupying various limited partner classes). Verano is the owner of this real estate.

4.  Although SAM was formally designated as the general partner of Verano, it was the Lozzis and Lampman, acting through their wholly owned Nevada Limited Liability Company, Triple L Management, LLC, who controlled SAM and the daily management, operations, and finances of Verano; and Verano's limited partners reposed in Triple L and its principals a special trust and confidence that they would act in good faith and exclusively in the best interests of the Verano partnership, and the partnership documents similarly gave them this obligation. And they were paid a handsome management fee for their efforts.

5.  But the Lozzis and Lampman apparently wanted more, and they found other—surreptitious—ways to funnel more of the investors' money out of the partnership and into their own pockets. This was done, in part, by creating numerous additional entities into which they could divert Verano's development and management funds and easily siphon them off for their own gain. VTLM Texas L.P., the debtor in this case, is one such entity. The Lozzis apparently created VTLM in 2007.

6.  Although the Verano limited partners were unaware of the existence of VTLM until early 2011, VTLM was certainly aware of Verano and was using it as its personal bank account. Verano's attorneys' invoices show that the Lozzis and Lampman used Verano's Nevada investors' money to pay for the formation of this new Lozzi/Lampman entity, and VTLM's principal, Tom Lozzi, admitted the same in a sworn deposition.

3

7. The conversion of Verano's funds to use as VTLM's seed money was not the most egregious diversion of Verano's assets by VTLM and its operators, however. Through much effort and expense on Verano's part (including the donation of 694 acres of land to the Texas A& M University), the Verano property was designated a Tax Increment Reinvestment Zone ("TIRZ") eligible for receipt of up to $250 million in public money to fund certain development of the property. Without knowledge, consent, or approval of Verano and its limited-partner investors, the Lozzis and Lampman had the government entities responsible for the TIRZ funds issue the contracts in VLTM's name, not Verano's.

8. On January 30, 2012, Verano filed a lawsuit in Clark County, Nevada (the "Nevada Case") against Fulbright & Jaworski LLP ("Fulbright"), Fulbright partner, Jane Macon ("Macon"), individually, Debtor, TM, Triple L, SAM, Lampman, and the Lozzis for, among other things, establishing Debtor for the TIRZ benefits, thereby wrongfully depriving Verano of the TIRZ benefits. In response, on February 6, 2012, in the 288th Judicial District Court for Bexar County, Texas, Fulbright initiated a lawsuit against Verano (the "Collection Lawsuit") for legal fees allegedly owed to Fulbright. Given the fact that the claims alleged in the Collection Action were identical or similar to those in the Nevada Case, Verano filed a Motion to Stay the proceedings of the Collection action pending the final resolution of the Nevada Case. The State District Court was set to hear that Motion on May 21, 2013. However, on the eve before the scheduled hearing, VTLM filed its Chapter 11 petition and removed the Collection Action to this Court.

## **Motion for Abstention Pursuant to 11 U.S.C § 305**

9. This case should be dismissed under 11 U.S.C. §305 which provides:: "The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if -(1) the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a). Courts may "consider a wide variety of factors relevant to the facts of the particular case in determining whether to abstain under Section 305." *In re Spade*, 258 B.R. 221, 231 (Bankr. D. Col. 2001). These relevant factors include:

> (a) The motivation of the parties seeking bankruptcy jurisdiction. *See In re First Financial Enterprises, Inc.*, 99 B.R. 751, 754 (Bankr.W.D.Tex. 1989).
>
> (b) Availability of another forum to protect the interests, or already pending proceedings in another forum. *See First Financial Enterprises*, 99 B.R. at 754; *International Zinc Coatings & Chem. Corp,* 355 B.R. 76, 82 (Bankr. N.D. Ill 2006); *Spade*, 258 B.R. at 231.
>
> (c) Economy and efficiency of administration. *See In re International Zinc Coatings & Chem. Corp.,* 355 B.R. 76, 82 (Bankr. N.D.Ill. 2006); *Spade*, 258 B.R. at 231.
>
> (d) Prejudice to the parties. *See International Zinc Coatings & Chem. Corp*, 355 B.R. at 82; *Spade*, 258 B.R. at 231.
>
> (e) The presence of unsettled issues of non-bankruptcy law. *See International Zinc Coatings & Chem. Corp*, 355 B.R. at 82.
>
> (f) The purpose of the bankruptcy. *International Zinc Coatings & Chem. Corp*, 355 B.R. at 82.

10. As noted above, in considering dismissal under Section 305, it is appropriate to consider the motivation of the parties in seeking the jurisdiction of the bankruptcy court. *Spade*, 258 B.R. at 231. "[T]he motives of the parties can significantly influence the Court's evaluation of other factors and contribute to the Court's decision to dismiss

under Section 305." *Id*. at 232. Abstention is appropriate when petitioner is motivated to use a Chapter 11 case purely as a litigation strategy. *First Financial Enterprises, Inc.*, 99 B.R. at 754. *See In re Business Information Co.*, 81 B.R. 382, 385 (Bankr.W.D.Pa.1988), (in which the court held that "the filing of a bankruptcy petition as a litigation tactic, or to resolve what is essentially a two party dispute, is an indication of a bad faith filing.")

11. It is clear that VTLM's motivation for filing its Chapter 11 petition was a litigation tactic to avoid the forum of the Nevada state court. This is not the first attempt by VTLM to do so. In the Nevada Case, VTLM challenged Nevada as the proper forum by filing a motion to dismiss for improper forum in the state district court. When that motion was denied, VTLM appealed the order finding that Nevada was the proper forum to the Supreme Court of Nevada. The Supreme Court of Nevada held that Nevada was the proper forum to adjudicate the dispute. And the Nevada State Court has found Nevada's exercise of personal jurisdiction over all parties to the Nevada case to be proper. See Exhibit 1 at p.4. Additionally, the Debtor saw the handwriting on the wall and anticipated that the Texas state district court in the Collection Action would likely stay the entire proceeding pending the resolution of the identical claims alleged in the Nevada Case by granting the then-pending motion to stay. On the eve of the hearing on that motion to stay, VTLM filed its Chapter 11 petition and immediately removed the Collection Action to this court, removed the Nevada case to federal court, followed by a motion to transfer the Nevada Case to this court. Such maneuver was nothing more that a litigation tactic to avoid the proper, first filed forum, Nevada. As such, this Court should decline from exercising jurisdiction over this Chapter 11 case and dismiss the same pursuant to 11 U.S.C. § 305.

**Motion to Dismiss Pursuant to 11 U.S.C. § 1112(b)**

12. In the alternative, this case should be dismissed "for cause" pursuant to 11 U.S.C. Sec. 1112(b). A Chapter 11 bankruptcy petition is subject to dismissal for "cause" under 11 U.S.C. § 1112(b) unless it is filed in good faith. *In re SGL Carbon Corporation,* 200 F.3d at 161. Determining whether a petition has been filed in good faith is a fact-intensive inquiry, and the court considers the totality of the circumstances. *In re SGL Carbon Corporation,* 200 F.3d at 162. "Once at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has been filed in 'good faith'". *Id.* at 162.

13. Although section 1112(b) does not explicitly require that cases be filed in "good faith," courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal. See, e.g., *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir.1986); *In re N.R. Guaranteed Retirement, Inc.*, 112 B.R. 263, 270 (Bankr.N.D.Ill.), aff'd, 119 B.R. 149 (N.D.Ill.1990). The good faith standard applied to bankruptcy petitions "furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir.1986). Accordingly, two inquiries are particularly relevant to the question of good faith: "(1) whether the petition serves a valid bankruptcy purpose, *e.g.,* by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 119 (3d Cir. 2004).

A. The Filing of VTLM's Chapter 11 Petition Serves No Bankruptcy Purpose.

14. The Fifth Circuit in *Little Creek Development* discussed at length the implicit good faith requirement for filing. The court explained that the good faith standard "... furthers the balancing process between the interests of debtors and creditors ...," and is "... necessary to legitimize the delay and costs imposed upon parties to a bankruptcy...." The court went on to reason that the good faith standard prevents abuse of the bankruptcy process by debtors that lack a real possibility of reorganization, who are only attempting to delay creditors. An implied good faith standard functions to protect the jurisdictional integrity of the bankruptcy court by keeping the powerful equitable tools of the court out of the reach of debtors or creditors with unclean hands. *In re Little Creek Dev. Co.*, at 1072.

15. The *Little Creek Development* court also set forth a number of factors which in various combinations are likely to be found in a case lacking the element of good faith in filing. These factors include: the debtor has one asset that is encumbered by the liens of secured creditors, the debtor has no employees except the principals and there is little to no cash flow, the debtor has no available sources of income to sustain a plan or to make adequate protection payments, there are only a few unsecured creditors in the case with relatively small claims, the property has been posted for arrearages on debt or the debtor has been unsuccessful at avoiding foreclosure in state court, the debtor and one creditor are at a standstill in state court proceedings, the debtor has lost at the state court trial level and is unable to post an appellate bond, bankruptcy is the only means by which the debtor

8

could avoid foreclosure, and there are allegations of wrongdoing against the debtor. *In re Little Creek Dev. Co.*, at 1069.

16. VTLM's filing of this petition overwhelmingly satisfies meets the classic bad faith definition outlined in *Little Creek*. Like, *Little Creek,* VTLM is a single asset debtor with no employees, no cash flow, no other sources of income, and few unsecured creditors. VTLM is a company without any operations that consists of nothing more than three people—its owners/partners Robert Lozzi, Thomas Lozzi, and Ralph Lampman. As Tom Lozzi testified on behalf of VTLM in the Nevada Case, "VTLM has never had an office"; not even "a file cabinet somewhere," let alone computers or a fax machine." See Exhibit 2 (Lozzi COR depo, 9/26/12 at 22:6-11; 42:9-12; 47:3-48:). As of December 31, 2011, VTLM's balance sheet showed total liabilities and equity of just $120.66. *See* Exhibit 3 (WNV002265). Thomas Lozzi has testified that VTLM has no other assets. Mr. Lozzi also testified that VTLM is not "the owner of anything." *Id*. at 77:1-3. It has no licenses or insurance policies either. Exhibit 2 (Lozzi COR depo, 9/26/12 at 118:4-24). Furthermore, VTLM's bankruptcy schedules and statement of financial affairs reflect assets totaling just $382.64. See Exhibit 4. The Monthly Operating Report filed by VTLM tells the whole story: **zero assets and zero revenue which equates to zero chance of reorganization.** See Exhibit 5.

17. VTLM has no other work and no likelihood of otherwise rehabilitating its estate. Tom Lozzi has stated unequivocally and under oath that VTLM has no operations and is not doing any business except winding up its affairs:

9

> Q: . . . What business does VTLM carry on now?
>
> A: There's only one thing VTLM is carrying on right now. It's me, trying to close out the road with Texas Sterling. That's it. That's it. The only other thing left is we have the TIF to transfer to Verano if Verano wants the TIF. That's it. There's no other reason for VTLM to exist. Once the TIF is transferred and the business with Texas Sterling is complete, there's no need – it has no – nothing. It's just an entity.
>
> Q: Okay. And when you say TIF, do you also mean the TIRZ agreement?
>
> A: TIRZ, I'm sorry. That's what I'm referring – TIF, TIRZ, it's the same thing. . . . . That's what I'm referring to.
>
> Q: . . . **Do you intended to carry on the business of VTLM in any way** after those two events that you just described?
>
> A: **No, none whatsoever**.

Exhibit 6 (Lozzi PMK depo, 9/26/12 at 40:13-41:2 (emphasis added)

18. The totality of circumstances support a factual finding that VTLM's Chapter 11 case was not filed in good faith. VTLM has no significant assets. It has no income. It has no employees to protect, no on-going business to preserve, and no creditors other than insiders. VTLM is not a viable business entity in need of bankruptcy protection. The law is clear: "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre." *In re Little Creek Dev. Co.,* 779 F.2d at 1073. With no raison d'etre, VTLM's Chapter 11 case lacks any valid bankruptcy purpose and, therefore, lacks good faith as required under 11 U.S.C. §1112(b). This case should be dismissed.

B. The Filing of the Bankruptcy Petition Constitutes Forum Shopping.

19. Chapter 11 relief should not be available to entities filing to obtain a perceived advantage in litigation with others or merely to allow debtor to escape a pre-existing forum. *In re HBA East, Inc.,* 87 B.R. 248, 260 (Bankr. E.D.N.Y.1988). If the sole purpose of the bankruptcy filing is to obtain a tactical litigation advantage, the petition is considered to have fallen outside the legitimate scope of the bankruptcy laws and should be dismissed. *In re American Capital Equipment, LLC,* 296 Fed.Appx. 270, 273 (3d. Cir. 2008)*; SGL Carbon,* 200 F.3d at 165.

20. Dismissal based upon bad faith in filing has been deemed appropriate where the bankruptcy petition was filed as a litigation tactic, a forum shopping device. *In re C-TC 9th Avenue Partnership,* 193 B.R. 650, 654 (Bankr.N.D.N.Y. 1995) (bankruptcy case dismissed where it was "clear that the primary motivation for, and characteristic of, Debtor's Chapter 11 case was dispute with [one creditor]" and debtor "filed Chapter 11 when it perceived that the State Court litigation took an unfavorable turn."); *Monsour Medical Center, Inc. v. Stein (In re Monsour Medical Center, Inc.),* 154 B.R. 201, 209 (Bankr.W.D.Pa.1993) (where filing of bankruptcy case was blatant forum shopping intended to reverse setbacks suffered in another forum, bankruptcy case dismissed as having been filed in bad faith); *In re Melp, Ltd.,* 143 B.R. 890, 893 (Bankr.E.D.Mo. 1992) (noting that bankruptcy court "should not be used as an alternative approach to state court procedures to resolve intra-company management and ownership disputes" and that "bankruptcy courts should become involved in cases only if the bankruptcy court's services are needed to truly reorganize a debtor who is having financial problems"); *In re Walter,* 108 B.R. 244, 250 (Bankr.C.D.Cal. 1989) (dismissal under § 1112(b) is proper remedy where bankruptcy petition was a forum shopping device); *In re*

*First Financial Enterprises, Inc.,* 99 B.R. 751, 756 (Bankr.W.D.Tex. 1989) (bankruptcy case dismissed under § 1112(b) as bad faith filing since "obvious purpose" in filing case was "to use the Chapter 11 filing as a litigation strategy").

21. Several courts have also recognized that a debtor has filed its Chapter 11 petition in bad faith when it had no reason to reorganize or rehabilitate and its filing of a Chapter 11 petition was merely an attempt to avoid litigating issues in state court. For example, in *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 850 (Bankr.S.D.N.Y. 1984), the bankruptcy court dismissed a Chapter 11 case as a bad faith filing after finding that the "petition was filed the same day that judgments on [certain] ... promissory notes were entered in the state court." Finding that the "debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating" and that the "debtor is unable to propose a meaningful plan of reorganization until its litigation ... is resolved," id. at 851, the bankruptcy court then found it "evident that the debtor seeks to use this court not to reorganize, but to relitigate. This is an impermissible use of Chapter 11...." id.

22. VTLM's filing of this Chapter 11 petition was strictly a litigation tactic engineered exclusively to avoid state court proceedings. No legitimate purpose exists for the Chapter 11 proceeding. VTLM is unable to propose a meaningful plan of reorganization. Debtor filed this case for the improper purpose of forum shopping. As a defendant in the Nevada Case, VTLM was dissatisfied with the treatment it was receiving in the state court and desired another forum in which to relitigate the dispute. Debtor commenced its bankruptcy case to remove the dispute from the state court where it was

pending for more than a year and not going very well for VTLM. Under such circumstances, this case is may be properly dismissed by this Court pursuant to 11 U.S.C. § 1112(b).

### Conclusion

Debtor's motivation in filing the Chapter 11 petition was strictly a litigation tactic to avoid the long-pending state court proceedings in Nevada. As such, dismissal under Bankruptcy Code § 305 is appropriate. As there is no prospect for reorganization, there is no valid purpose for the Chapter 11 case. The issues between the parties can be addressed (and was being addressed) effectively in the state courts. This court should not allow its jurisdiction to be abused as a tactical advantage for forum shopping, especially when there is no chance of reorganization for this defunct, asset-less entity.

WHEREFORE, PREMISES CONSIDERED, Movant, Verano Land Group LP prays that the Court enter an Order dismissing this bankruptcy case pursuant to 11 U.S.C. § 305. In the alternative, Movant prays that the Court enter an Order dismissing this bankruptcy case pursuant to 11 U.S.C. § 1112(b). Movant further prays for such other relief to which Movant may show itself justly entitled, either at law or in equity.

Respectfully Submitted,

Villa & White, L.L.P.
Attorneys at Law
1100 N.W. Loop 410, #700
San Antonio, Texas 78213
Tel: (210) 225-4500
Fax: (210) 222-1480

By: */s/ Morris E. "Trey" White, III*

          Morris E. "Trey" White, III
          Texas Bar No.  24003162
          Attorney for Verano Land Group LP

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 8th day of August, 2013, a true and correct copy of the foregoing document as filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system.

          */s/ Morris E. "Trey" White, III*
          Morris E. "Trey" White, III